**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSEPH R. WRIGHT,** | : | |
| **Petitioner,** | : | **CIVIL ACTION NO. 3:26-1246** |
| **v.** | : | **(JUDGE MANNION)** |
| **JESSICA SAGE,** *et al.,* | : | |
| **Respondents.** | : | |

## MEMORANDUM

Pending before the Court is Joseph R. Wright's ("Petitioner") petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241. (**Doc. 1**). For the reasons stated herein, Petitioner's petition will be **GRANTED** insofar as it requests a bond hearing.

## I.    BACKGROUND

Petitioner is a citizen and native of Jamaica. (Doc. 3-2 at 1). He was last admitted to the United States at Fort Lauderdale, Florida on February 10, 2017, with an H2B Visa with authorization to remain in the United States for a temporary period not to exceed May 31, 2017. *Id.* at 3. Petitioner remained in the United States beyond May 31, 2017. *Id.*

On August 15, 2018, Petitioner was arrested by the Pennsylvania State Police and charged with possession of a controlled substance by a person not registered, in violation of 35 P.S. §780-113(a)(16); and manufacture,

delivery, or possession with intent to manufacture or deliver, in violation of 35 P.S. §780-113(a)(30). (Doc. 3-4 at 3). On March 17, 2020, Petitioner was convicted of the charges and later sentenced to two years of probation. (Doc. 3-2 at 3). On June 16, 2025, Petitioner was arrested by the Upper Darby (Pennsylvania) Police Department and charged with simple assault and harassment. (Doc. 3-2 at 3). On September 9, 2025, these charges were *nolle prossed*/withdrawn. (Doc. 6-1 at 10).[1]

On July 13, 2025, the Department of Homeland Security ("DHS") issued a warrant for Petitioner's arrest based upon probable cause that Petitioner was removable from the United States. (Doc. 3-5). On July 17, 2025, Enforcement and Removal Operations ("ERO") Philadelphia, Drug Enforcement Administration ("DEA") Philadelphia, Internal Revenue Service ("IRS") Philadelphia, and the U.S. Border Patrol encountered Petitioner when initiating a vehicle stop. (Doc. 3-2). Petitioner allegedly jumped out of the vehicle and ran toward the backyard of a home. *Id.* Officers issued a command to stop, and Petitioner jumped a fence to run into the backyard. *Id.* Officers pursued Petitioner on foot. *Id.* Petitioner was ultimately arrested for

---

[1] The Court notes that in Respondents' May 25, 2026, response to the petition, they failed to disclose that Petitioner's simple assault and harassment charges were withdrawn. (Doc. 3 at 2). Only in the court-ordered sur-reply did Respondents notify the Court of the charges' status.

remaining in the United States without authorization. *Id.* That same day, a Notice to Appear ("NTA") was issued, charging Petitioner as inadmissible pursuant to §237(a)(1)(B) of the Immigration and Nationality Act ("INA"). (Doc. 3-3 at 1). The NTA scheduled a hearing for July 28, 2025. *Id.*

On October 31, 2025, Petitioner wrote a letter to the Elizabeth Immigration Court requesting to be released on bond, which was rejected because Petitioner was represented by an attorney, who was responsible for submitting all filings. (Doc. 3-6). On November 18, 2025, Immigration Judge John Rubenstein found Petitioner to be inadmissible under INA §237(a)(1)(B). (Doc. 3-7 at 3). Petitioner was ordered removed to Jamaica. *Id.* at 5. On December 17, 2025, Petitioner filed an appeal from Judge Rubenstein's decision. (Doc. 3-8). The appeal remains pending. *See* EOIR Automated Case Information, Alien Number 214-969-189.

Petitioner is currently detained at the Federal Correctional Institution in Lewisburg, Pennsylvania ("FCI Lewisburg"). (Doc. 1, ¶21). On May 8, 2026, Petitioner filed the present petition for writ of habeas corpus, challenging the lawfulness of his prolonged detention without a bond hearing. (Doc. 1). On May 11, 2026, the Court ordered Respondents to show cause within fourteen days as to why his petition should not be granted. (Doc. 2). On May 25, 2026, Respondents filed their response to the petition, which argued that Petitioner

was properly detained under 8 U.S.C. §1226(a). (Doc. 3). On May 29, 2026, Petitioner filed a traverse to Respondents' response, arguing that he was mandatorily detained under §1226(c) based upon his 2020 drug convictions, not under §1226(a). (Doc. 4). The Court therefore ordered Respondents to file a sur-reply. (Doc. 5). Respondents complied with the Court's order on June 25, 2026, conceding, with no accountability for their previous averments, that Petitioner was detained under §1226(c). (Doc. 6). Petitioner's petition is now ripe for disposition.

## II.   LEGAL STANDARD

Under 28 U.S.C. §2241, district courts have the authority to grant writs of habeas corpus where a petitioner is "in custody under or by color of the authority of the United States . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2241(c)(1), (3).

Furthermore, "[i]t is well established that a federal habeas corpus petitioner generally has the burden of proving facts entitling him to a discharge from custody." *Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972). However, "[w]ith respect to certain factual issues, the burden of proof may be shifted to the state because of specific policy considerations or because the available evidence is likely to be in the hands of the state." *Id.*

- 4 -

## III.    DISCUSSION

### a. Jurisdiction

The Court's authority to hear noncitizen habeas petitions under 28 U.S.C. §2241 is limited is some circumstances by 8 U.S.C. §§1252(g), (b)(9), and (a)(2)(B)(ii).

§1252(g) states that "[e]xcept as provided in this section and notwithstanding any other provisions of law . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. §1252(g). Here, the Court's jurisdiction is not barred by §1252(g) as Petitioner's claim neither challenges the commencement of removal proceedings, the Attorney General's decision to adjudicate, nor the execution of a removal order. *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (finding that §1252(g)(2) divests the court of jurisdiction "only to [these] three discrete actions").

§1252(b)(9) states that "[j]udicial review of all questions of law and fact . . . arising from any action taken or proceedings brought to remove an alien from the United States . . . shall be available only on judicial review of a final order [of removal]." 8 U.S.C. §1252(b)(9). Here, the Court's jurisdiction is not

barred by §1252(b)(9) as Petitioner does not seek review of any law or fact arising from a removal proceeding. *See E.O.H.C. v. Sec'y United States Dept. of Homeland Sec.*, 950 F.3d 177, 186 (3d Cir. 2020) (finding that §1252(b)(9) "does not reach claims that are independent of, or wholly collateral to, the removal process").

§1252(a)(2)(B)(ii) prohibits district courts from reviewing discretionary detention choices of the Attorney General or Secretary of Homeland Security. 8 U.S.C. §1252(a)(2)(B)(ii). Here, the Court's jurisdiction is not barred by §1252(a)(2)(B)(ii) as Petitioner does not challenge a discretionary detention choice. *See Patel v. O'Neil*, 2025 WL 3516865, at *3 (M.D.Pa. Dec. 8, 2025) ("section 1252(a)(2)(B)(ii) is inapposite because the Respondents' 'statutory detention power is "not a matter of discretion" to which §1252(a)(2)(B)(ii) applies'") (internal citations omitted).

Finally, courts considering the issue of whether a petitioner is being wrongfully detained without a bond hearing "have almost universally held that they have jurisdiction," and, therefore, that §§1252(g), (b)(9), and (a)(2)(B)(ii) do not apply. *Patel*, 2025 WL 3516865 at *3.

### b. Exhaustion of administrative remedies

"A petitioner challenging agency action must generally first exhaust administrative remedies; however, in habeas proceedings, 'exhaustion

- 6 -

exists as a judicially created doctrine applied at the Court's discretion.'" *Vadel v. Lowe*, 2025 WL 3772059, at *3 (M.D.Pa. Dec. 31, 2025) (quoting *Kashranov v. Jamison*, 2025 WL 3188399, at *3 (E.D.Pa. Nov. 14, 2025)). Here, further administrative review would be pointless, as Petitioner is detained under 8 U.S.C. §1226(c), which precludes immigration judges from holding a bond hearing. *See id.*; *see also Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025) (holding that an immigration judge "has no authority to consider bond requests for any person who entered the United States without admission").

### c. Petitioner's detention under 8 U.S.C. §1226(c) is proper.

8 U.S.C. §1226(c)(1)(B) provides that "[t]he Attorney General shall take into custody any individual who . . . is deportable by reason of having committed any offense covered in section 1227 . . . (B) . . . of this title." 8 U.S.C. §1227(B)(i) provides that "[a]ny alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of title 21), other than a single offense involving possession for one's own use of 30 grams or less or marijuana, is deportable."

Petitioner has prior convictions for possession of a controlled substance by a person not registered, in violation of 35 P.S. §780-113(a)(16); and manufacture, delivery, or possession with intent to manufacture or deliver, in violation of 35 P.S. §780-113(a)(30). (Docs. 3-4 at 3, 3-2 at 3). Accordingly, he is properly detained under §1226(c).

### d. Petitioner's detention has become unreasonably prolonged, entitling him to an individualized bond hearing.

"To determine whether prolonged detention is unreasonable, a 'highly-specific-fact-inquiry,' this Court must consider 'a nonexhaustive list of four factors to consider in assessing whether an alien's detention has grown unreasonable.'" *Rahmatov v. Lowe*, 2026 WL 837974, *2 (M.D.Pa. Mar. 26, 2026) (quoting *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 210-11 (3d Cir. 2020)). "The most important factor is the duration of detention." *German Santos*, 965 F.3d at 211. Duration is "evaluate[d] . . . along with all other circumstances," including: (1) "whether the detention is likely to continue," (2) "the reasons for the delay," and (3) "whether the alien's conditions of confinement are 'meaningfully different[ ]' from criminal punishment." *Id.* (quoting *Chavez-Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469, 476-77 (3d Cir. 2015)).

With respect to Petitioner's duration of detention, he has been in immigration custody since July 17, 2025—approximately one year. (Doc. 3-2). In *German Santos*, the Third Circuit noted that "detention becomes more and more suspect after five months," and that "detention became unreasonable sometime between six months and one year." *Id.* Recent cases from district courts in this Circuit have relied on *German Santos* to conclude that the duration factor weighs in favor of those who are similarly situated to Petitioner. *See J.G.J. v. Sage*, 3:26-CV-706, 2026 WL 915576 at *10 (M.D.Pa. Apr. 3, 2026) (("Here, Petitioner has been detained for approximately one year and the Court finds that the duration of civil immigration detention favors relief at this time.") (citing *German Santos*, 965 F.3d at 210-11)); *C.B. v. Oddo*, No. 25-0263, 2025 WL 2977870, at *5 (W.D. Pa. Oct. 22, 2025) (("[Petitioner] has been detained continuously since December 9, 2024 – more than 10 months as of this writing. This delay falls within the range where courts have held that delays start to become unreasonable.") (citing *German Santos*, 965 F.3d at 211)); *Mashchenko v. Rokosky*, No. 25-12387, 2026 WL 185205 at *3 (D.N.J. Jan. 25, 2026) ((concluding that nine months' detention is an "unreasonably long time.") (quoting *German Santos*, 965 F.3d at 213)). Accordingly, the first *German Santos* factor strongly weighs in favor of Petitioner.

The Court must also consider whether Petitioner's detention is likely to continue. *German Santos*, 965 F.3d at 211. The Court finds that it is, as immigration proceedings with respect to his removability are still ongoing, and depending on the outcome, could later go through a lengthy appeals process. Respondents also concede that the second factor weighs in Petitioner's favor. (Doc. 6 at 4).

As for the reasons for delay, a review of Petitioner's proceedings reveals that neither party is responsible. Accordingly, this factor neither weighs in favor of nor against relief.

Finally, the Court finds that Petitioner's conditions of confinement are not meaningfully different from criminal punishment. *See Alvarado v. Sage*, 3:26-CV-680, 2026 WL 1497185 at *3 (M.D.Pa. May 28, 2026) ("Federal prison is federal prison."). Petitioner is currently detained at FCI Lewisburg, which is a medium-security federal prison. *Id.* Noncitizens housed at FCI Lewisburg are treated "almost identically to those serving prison sentences at FCI Lewisburg." (Doc. 1-3). Respondents argue that "[a]lthough Petitioner is confined in [FCI Lewisburg], he is not housed in a cell for twenty-three hours a day [like the petitioner in *German Santos*]." (Doc. 6 at 5). The Court is unpersuaded by this argument. A petitioner obviously need not be detained under such extremely punitive conditions as twenty-three hours a

- 10 -

day in one's cell for their confinement to be akin to criminal punishment. The mere fact that Petitioner, a civil immigration detainee, is housed in a criminal facility among criminals suffices to show that his conditions of confinement do not meaningfully differ from criminal punishment. Where, as here, "civil detention under § 1226(c) looks penal, that tilts the scales toward finding the detention unreasonable." *German Santos*, 965 F.3d at 211.

Thus, upon weighing the *German Santos* factors, the Court finds that Petitioner's detention under 8 U.S.C. §1226(c) has become unreasonable. He has been detained for approximately one year with no indication that his detention will end any time soon, and his detention appears penal in nature. Accordingly, Petitioner is entitled to a prompt and individualized bond hearing, where "the Government must put forth clear and convincing evidence that continued detention is necessary" and show that Petitioner "would likely flee or pose a danger to the community if released." *Id.* at 213.

### e. EAJA fees and costs

Petitioner will be permitted to file a motion for costs and fees pursuant to the Equal Access to Justice Act ("EAJA") within thirty days of the entry of this judgment. *See Michelin v. Warden Moshannon Valley Correctional Center*, - -F.4th--, 2026 WL 263843 (3d Cir. Feb. 2, 2026) (holding that a petition for a writ of habeas corpus from immigration detention under §2241

- 11 -

is an EAJA "civil action," entitling petitioners to attorneys' fees and costs if the Government's position was not "substantially justified").

## IV.   CONCLUSION

For the foregoing reasons, Petitioner's petition for a writ of habeas corpus under 28 U.S.C. §2241 will be **GRANTED**. Respondents will be required to provide Petitioner with an individualized bond hearing before an immigration judge within fourteen days.[2] An appropriate order shall issue.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: July 14, 2026**
26-1246-01

---

[2] The Court is in receipt of Petitioner's "notice of supplemental authority," (Doc. 7), which identifies a case where the Honorable Karoline Mehalchick granted habeas relief and elected to conduct the bond hearing herself. However, this Court finds that an immigration judge would be better suited to assess the facts of this particular case.